JEROME GARDNER    )
           )
           )
    v.      )   **No. 2:08 CV 284**
           )   **(arising from No. 2:05 CR 25)**
UNITED STATES OF AMERICA  )
           )

## OPINION AND ORDER

On September 26, 2008, the Clerk of the Court received a motion pursuant to 28 U.S.C. § 2255 from Jerome Gardner (DE # 147), requesting that his conviction be vacated. A § 2255 motion allows a person in federal custody to attack his or her sentence on constitutional grounds, because it is otherwise illegal, or because the court that imposed it was without jurisdiction. RULE 4 of the RULES GOVERNING § 2255 PROCEEDINGS requires the court to promptly examine the motion. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." RULE 4(b), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS.

On July 27, 2005, a jury found Gardner guilty of one charge of possessing, with intent to distribute, "crack" cocaine base, in violation of 21 U.S.C. § 841(a)(1), and one count of possessing a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. § 844(a). Gardner took a direct appeal, and his conviction and sentence were affirmed. *United States v. Doxy*, 225 Fed. Appx. 400 (7th

Cir. 2007). His petition for *certiorari* was denied on October 1, 2007. *Gardner v. United States*, – U.S. –, 128 S. Ct. 265, 169 L. Ed. 2d 189 (2007). His § 2255 motion was timely filed within one year thereafter.

**I. Preliminary issues**

Before addressing the merits of Gardner's motion, there are two preliminary matters to dispose of, a motion Gardner filed to amend his § 2255 petition, and a motion for discovery.

**A. Motion to amend**

When the court first attempted to conduct its RULE 4(b) review of Gardner's motion, it discovered that several of his claims were too vague to review. It therefore directed him to file a supplemental statement providing more explanation. He did so on October 24, 2008 (DE # 155), filing a new memorandum (which Gardner calls an "addendum") answering the court's specific requests, and providing a better explanation of each of the grounds raised in his motion originally. Gardner also asked that he be allowed to add two new grounds to the seven grounds he had initially raised: ground eight, a claim that his appellate counsel was ineffective for not raising on appeal the issue of whether his trial counsel was ineffective for not requesting voir dire to find out whether any of the jurors knew one or more of three "surprise" witnesses who testified on behalf of the government at trial; and ground nine, a claim that his appellate counsel was ineffective for not raising on appeal the issue of whether his trial counsel was ineffective for not requesting a continuance after the government called the three

"surprise" witnesses who had not been listed in the pretrial order. Gardner requests that he be allowed to completely replace the addendum attached to his original filing (DE # 147) with his amended addendum (DE # 155) containing the additional grounds.

A § 2255 motion may be freely amended as long as the amendments do not add entirely new claims after the one-year deadline for filing the motion has passed. *Rodriguez v. United States*, 286 F.3d 972, 980-81 (7th Cir. 2002); *Johnson v. United States,* 196 F.3d 802, 805 (7th Cir. 1999). Ground four of Gardner's initial motion framed the following issue:

> Whether the defendant was denied the effective assistance of counsel on direct appeal , when his appellant [sic] counsel failed to raise that the District Court abused its discretion when it failed to exclude the testimony of three surprise witnesses, after the government blatantly violated an [sic] pretrial order?

The two grounds which Gardner wishes to add by amendment simply provide additional argument as to why he believes his counsel's performance on direct appeal was ineffective as it pertains to raising issues regarding these three additional witnesses. The rest of Gardner's amended addendum provides a clearer and more thorough explanation of Gardner's original filing.

Gardner's amendment will be allowed, and the memorandum/addendum attached to his motion originally filed (DE # 147) is replaced by the one filed on October 24, 2008 (DE # 155). The court will consider the merits of Gardner's additional grounds, and the discussion that follows speaks to Gardner's motion as it is argued in the October 24 memorandum/addendum (DE # 155).

**B. Motion for discovery**

The second preliminary matter concerns a letter written by Gardner to the Clerk of the Court, received on October 30, 2008 (DE # 158), in which he explains the reasons why he wants copies of "lab request forms" from the Indiana State Police forensic crime laboratory, which the Gary Police Department used to order fingerprint analysis of evidence in this case. Gardner wrote the letter after a Freedom of Information Act ("FOIA") request he made to the clerk for these forms was denied, because the FOIA does not apply to the United States courts. (Order of October 16, 2008, DE # 151). Besides that, the forms he seeks were neither offered, nor admitted, into evidence at trial, which means that the clerk does not have and cannot provide them. The court, therefore, construes Gardner's letter explaining his purported need for these forms as a motion for discovery pursuant to RULE 6 of the RULES GOVERNING § 2255 PROCEEDINGS.

The background facts underlying Gardner's desire to obtain copies of the lab request forms is this. At trial, Detective Irving Givens of the Gary, Indiana Police Department testified that a plastic bag containing a substance suspected to be crack cocaine, seized from the space between the center console and the passenger seat of the vehicle Gardner and his co-defendant, Tianna Doxy, were in immediately prior to their arrests, was sent to the Indiana State Police forensic lab for testing. In addition to testing to determine the composition of the substance in the bag, Givens requested that the bag be checked for fingerprints. Transcript of Trial, 2:05 CR 25 (DE # 106) vol. 3, p. 48 (hereinafter, cited simply by volume and page). To prepare for his testimony at trial,

Givens called the lab and learned that the fingerprint analysis had not yet been done. Id. He testified that in his experience, he had "never got a fingerprint off of a baggie," Id., p. 49, and the trial went forward without any fingerprint analysis being conducted.[1]

When Givens disclosed that he had requested fingerprint analysis, defense counsel immediately requested a sidebar, informing the court that this was the first notice that they had been given of that fact, indicating "to us that maybe there is something pending out there that they just didn't want us to know about." Id., p. 52. The government explained that it had called the lab only a day earlier, learning then that the testing had not been performed, and decided not to ask for a continuance because of the unlikely possibility that any prints would be recovered. Id at 51-52. In addition, while the government presumed it had been in possession of a "property receipt"[2] showing that fingerprint analysis had been requested and made an "error" by

_____

[1] During cross-examination, Givens explained that he did not realize, until after the trial started, that fingerprint results had not been received. Vol. 3, p. 55. On re-direct, Givens reiterated that he could not remember ever getting fingerprints from a plastic bag, and stated that it did not cause him concern that fingerprint analysis had not been conducted. Vol. 3, p. 58. Givens' testimony was consistent with that of FBI Special Agent Mark Becker, who testified as an expert witness. Becker testified that "we"—presumably his division or section of the FBI—no longer even request fingerprint analysis of plastic bags containing suspected drugs, because of the lack of success in obtaining results. Vol. 2, p. 117.

[2] It is not clear, from reading the transcript, whether the Assistant United States Attorney is using the term "property receipt" to refer to the lab request form, or whether he means that his property receipt forms would show that he received a copy of the lab request form from the Gary Police Department. Whichever is the case, the distinction is not important to the present analysis.

not giving the defense a copy,[3] there was no *Brady* violation because there were no results and so no exculpatory evidence regarding fingerprints. Id. at 51. Counsel for both defendants moved the court to declare a mistrial, and that request was denied. Id. at 53.

Gardner's motion for discovery seeks the "lab request forms from the Indiana State Police Laboratory" in order to determine whether or not fingerprint analysis was requested. (DE # 158). In order to obtain discovery in a § 2255 proceeding, a party must provide reasons which show "good cause" for the court to authorize it. Rule 6(a), (b); *see Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004) (discussing discovery in § 2254 proceeding.) Good cause does not exist when the facts alleged do not provide a basis for relief. *Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir. 1990).

Gardner argues that copies of the lab request forms from the Indiana State Police will allow him to prove one of two things: either fingerprint analysis was not requested, which would show that the government knowingly used perjured testimony; or that it was requested, which would allow him to "raise an ineffective [assistance of appellate counsel] claim."[4] Both of these contentions are without merit.

---

[3] In this district, the government typically allows defense counsel "open file" discovery, whether or not disclosure is required by FED. R. CRIM. P. 16.

[4] It is clear that Gardner is referring only to appellate counsel only. Trial counsel did what was possible under the circumstances by requesting a mistrial, and Gardner explains that the mistrial motion "clearly made this an issue for appellate review." DE #158, p. 1.

As to the first alternative, besides the possibility that Detective Givens could have simply been mistaken, a conviction obtained by the knowing use of false testimony will be set aside when there is any reasonable likelihood that the false testimony affected the jury's judgment. *Schaff v. Snyder*, 190 F.3d 513, 530 (7th Cir. 1999). Keeping in mind that no fingerprint evidence was introduced at trial—because there were no results available—the question whether Detective Givens might have lied, with the government's knowledge, about whether he did or did not request fingerprint analysis is so collateral to the material issues in the case bearing on Gardner's guilt that there is no possibility any such lie influenced the jury's verdict.[5]

The second alternative, that appellate counsel was ineffective for not raising on appeal the court's refusal to declare a mistrial, is equally untenable. The presumption that appellate counsel rendered effective assistance is outweighed only when he or she fails to raise "significant and obvious" issues that are stronger than those which were presented. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985).

This court's refusal to declare a mistrial is so insignificant as to be a non-issue, making appellate counsel's decision not to raise the issue sound. RULE 16(a)(1)(F) of the FEDERAL RULES OF CRIMINAL PROCEDURE requires the government to disclose to the

---

[5] If it did influence the jury at all, such influence would have been in Gardner's favor. Both defense counsel argued, during closing, that the jury should draw negative inferences against the government for ordering fingerprint analysis, not ensuring that it was conducted, and then maintaining that it was unimportant. Such an obvious argument for the defense suggests how unlikely it is that the government would have knowingly used false testimony on this issue.

defense the "result" of any scientific test or experiment. Here there was no result to disclose. Likewise, the fact that a test was ordered, but not completed, is not exculpatory, meaning that disclosure was not required by *Brady v. Maryland*, 373 U.S. 83 (1963). Thus, the court did not err by refusing to grant a mistrial, and appellate counsel cannot be faulted for failing to pursue a non-issue.

For these reasons, the evidence Gardner wants to obtain would not provide support for any potential ground for relief. He has, therefore, not shown good cause to conduct discovery, and his request is **DENIED**.

## II. Gardner's motion seeking to vacate his conviction pursuant to 28 U.S.C. § 2255

Gardner's motion is based entirely on an argument that he received ineffective assistance of counsel at each stage of his case: trial, sentencing and on appeal. The test to determine whether an attorney has delivered ineffective assistance such that a defendant's Sixth Amendment right to counsel has been violated is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test has two prongs. First, the "defendant must show that the performance of counsel fell outside the 'range of competence demanded of attorneys in criminal cases'–i.e., that it 'fell below an objective standard of reasonableness.'" *Barrow v. Uchtman*, 398 F.3d 597, 603 (7th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687). There is a strong presumption of competence. *Id*.

Second, the defendant must show that he suffered prejudice as a result of his counsel's ineffectiveness. *Id*. In other words, the defendant must demonstrate "a reasonable probability that, *but for* counsel's unprofessional error, the result of the

proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The court should deny an ineffective assistance of counsel claim if the defendant

has made an insufficient showing on either prong. *Strickland*, 466 U.S. at 697. The court

may assess the prongs in whichever order it chooses. *Id*. Additionally, though Gardner

has made multiple allegations in support of his claims that trial and appellate counsel

were constitutionally ineffective, it must be kept in mind that:

> [I]neffective assistance of counsel is a single ground for relief
> no matter how many failings the lawyer may have displayed.
> Counsel's work must be assessed as a whole; it is the overall
> deficient performance, rather than a specific failing, that
> constitutes the ground of relief.

*Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005) (citing *Bell v. Cone,* 535 U.S. 685,

697 (2002); *Strickland*, 466 U.S. at 690; *Holman v. Gilmore,* 126 F.3d 876, 881-84 (7th Cir.

1997)). Thus, while the court addresses each of the issues which Gardner has labeled as

"grounds" individually, it is counsel's performance as a whole that must be judged.[6]

 For the reasons that follow, Gardner's allegations, liberally construed and accepted as

true, are not sufficient to raise even a colorable claim of ineffective assistance of counsel,

at any level of the proceedings.

---

[6] Gardner has stated as his seventh ground for relief: "Whether the cumulative
impact of the multiple deficiencies in the defendant's appellate counsel's performance
prejudiced the defendant." This is the method of analysis employed by the court herein,
and so this ground need not be discussed further.

## A. Performance of trial/sentencing counsel

As reorganized by the court,[7] Gardner has identified four aspects of his trial counsel's performance which he believe fell below the necessary level of competence during trial, and one at sentencing. The first four issues, regarding trial, split neatly into two categories: two of the matters pertain to whether a severance should have been sought, and two pertain to counsel's response to the government presenting three "surprise" witnesses who were not disclosed prior to trial. As to performance at sentencing, Gardner asserts that counsel was ineffective for not objecting to him being sentenced for possessing the "crack" form of cocaine.

### 1. Severance

Gardner's fifth ground[8] is that his trial counsel erred by failing to move for a severance based on the fact that Gardner and his co-defendant, Tianna Doxy, had

---

[7] The four issues labeled by Gardner as grounds five, six, eight and nine have each been cast as an argument that his appellate counsel was ineffective for not raising an issue showing that his trial counsel was ineffective. For example, Gardner's ground five is phrased "defendant was denied the effective assistance of counsel on direct appeal, when his appellate counsel failed to raise that the defendant had been denied the effective assistance of counsel . . . when his trial counsel failed to move for a severance[.]" These arguments are properly framed and analyzed at the first level, that is, whether trial counsel was ineffective, for two reasons. First, because if trial counsel was not ineffective, then there was no issue for appellate counsel to raise. Second, because ineffective assistance of trial counsel can always be raised in a § 2255 motion. *Massaro v. United States*, 538 U.S. 500 (2003). This means that it would be difficult, if not impossible, to show prejudice resulting from appellate counsel not having raised the issue.

[8] The court will identify Gardner's arguments using his original numbering scheme, for convenient reference to his addendum.

mutually exclusive defenses. His sixth ground, a variation of the fifth, is that his trial counsel erred by not moving for a severance because co-defendant Doxy had made an out-of-court statement which exculpated him, and a joint trial would "tend to silence the witness." In other words, Gardner is arguing that, had they been tried separately, Doxy would have testified in his defense, reaffirming and possibly elaborating upon her out-of-court statement. The court addresses these related arguments regarding severance together.

The exculpatory statement at issue was "it's mine," and was made by Doxy immediately after a police officer displayed a plastic bag of what turned out to be crack cocaine, which he had just found between the console and the passenger seat of the vehicle Doxy and Gardner were in immediately prior to their arrests. This statement came into evidence through the testimony of the arresting officer, and was admitted at trial as evidence solely against Doxy,[9] who was driving the car. The bag was located next to Gardner, who was riding in the passenger seat. The arresting officers found that Gardner had both a scale and a large quantity of cash, mainly in $20 bills, in his pockets. The government's theory—which the jury agreed with—was that the defendants had joint possession of the crack cocaine.

Each defendant's trial strategy was to argue that the crack cocaine was solely in the possession of the other. Doxy's argument was that her "it's mine" statement

_____

[9] Gardner's attorney made ample use of the statement in Gardner's defense, however.

referred to marijuana which had also been found, that the bag of crack cocaine was in the area of the car within Gardner's control, and that he was the one with the scale and the cash. Gardner's argument, with additional details not necessary to repeat here, was that Doxy's exclamation that the crack cocaine belonged to her at the time she was arrested proved that it was in her possession only.

Rather than a reason for severance, this type of finger-pointing is a mutually-exclusive defense that weighs in favor of a joint trial: "The fact that it is certain that a crime was committed by one of two defendants is a reason for trying them together, rather than a reason against, to avoid 'the scandal and inequity of inconsistent verdicts.'" *United States v. Zafiro*, 945 F.2d 881, 885 (7th Cir. 1991) (quoting *Richardson v. Marsh*, 481 U.S. 200 (1987)). Pertinent to Gardner's ineffective assistance argument, the court in *Zafiro* remarked:

> We remind the defense bar that they are not obliged to make futile arguments on behalf of their clients. The argument that a conviction should be reversed because the district judge failed to sever properly joined defendants for trial is nearly always futile even when the defendants can be said to be presenting mutually antagonistic defenses.

*Id*. at 886.

 *Zafiro* was affirmed by the Supreme Court, which held that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). One example the Court gave of a situation where a trial right might

be compromised is where "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Id.* While Gardner's second argument why a severance should have been sought is consistent with this in theory, his argument isn't supported by the trial that did take place.

For starters, Doxy's inculpatory statement "it's mine" was admitted at trial as evidence solely against her, but served as the cornerstone of Gardner's defense. Gardner's present argument assumes—without any support, such as an affidavit from Doxy[10]—that had she been tried separately, she for some reason would have been willing to testify in his defense by reaffirming her statement, claiming sole possession of the drugs and admitting her guilt. Not only is this theory inconsistent with what did

---

[10] Gardner made the argument without having such support. It should be noted, however, that on March 12, 2009, the court received a document from Doxy entitled "Affidavit of Truth" dated March 5, 2009. (DE # 169). In this document Doxy states that the drugs were hers, not Gardner's; that she told this to her defense counsel prior to trial; that she wanted to plead guilty admitting this fact, but her attorney convinced her not to; that her defense was untrue and made up by her attorney; and that she did not tell her counsel that she made the statement "it's mine" only to protect her relationship with Gardner. Doxy does not explain how this can be reconciled with the amended addendum she filed in support of her § 2255 motion, in which she argues that "it was impossible for her to obtain an [sic] fair trial" because the core of her defense was that the drugs belonged to Gardner and that she made the "it's mine" statement "only out of protection of her and Mr. Gardner's realationship [sic]." DE # 161 p. 7 (p. 5 of addendum). Doxy's late-hour recantation, which repudiates both the defense she sat and watched her attorney present at trial, and the argument she makes, under penalty of perjury, in her § 2255 motion, is given no weight by this court. See *United States v. Ogle*, 425 F.3d 471, 478 (7th Cir. 2005) (recantations viewed with skepticism and suspicion, especially where witness has ongoing relationship with defendant); *United States v. Kamel*, 965 F.2d 484, 494 (7th Cir. 1992) ("Confessions given only after the confessor's conviction, and especially when proffered by relatives or friends, are engulfed in an 'aura of suspicion and doubt.'")

occur—she could have done the same thing in their joint trial, but instead chose to defend herself by pointing the finger at Gardner—it is inconsistent with her conduct now. She has filed her own § 2255 motion, claiming that she is the one who suffered prejudice by being tried jointly with Gardner.

In short, there was no good argument to be made in favor of severing the defendants for separate trials, and Gardner's trial counsel's performance was not sub-par for failing to make such a motion. Concomitantly, his appellate counsel's performance cannot be questioned for failing to raise such a meritless issue on direct appeal.

### 2. "Surprise" witnesses

At trial, during the testimony of forensic drug chemist Kimberley Ivanyo, defense counsel objected when the government first moved to admit into evidence the marijuana (the crack cocaine would have come next) seized from Doxy and Gardner which Ivanyo had tested. The basis of the objection was that the government had not established a chain of custody, showing where the drugs were during the seven months between the time they were seized from the defendants until arriving in Ivanyo's hands at the laboratory.

Although a presumption of regularity attaches to evidence kept in official custody when a defendant has no evidence of tampering, and defects in the chain of custody go to the weight of the evidence rather than its reliability, *United States v. Smith*, 308 F.3d 726, 739 (7th Cir. 2002), the court told the government it needed to call a

witness with personal knowledge that routine police procedures for custody of the evidence had been followed.[11] Vol. 2, p. 92. The three witnesses Gardner identifies as a "surprise," Carlos Rivera, Fred Cook and Leonard Monroe, were called by the government to do just that. Officers Cook and Monroe were responsible for the evidence vault at the Gary Police Department, and Sergeant Rivera was the officer who took custody from Cook and Monroe and transported the drugs to the forensic lab.

As ground eight of his motion, Gardner argues that his trial counsel was ineffective for not requesting voir dire to determine whether any juror knew one of these three witnesses, which could have impacted the juror's ability to be fair and impartial. As ground nine, Gardner argues that his trial counsel erred by failing "to specifically ask for a continuance and address to the court that the government had violated the pretrial order" by not disclosing these three witnesses prior to trial.

Taking the second of these two points first—that is, ground nine—Gardner does not suggest what his attorney would have used this continuance for, other than to bring to the court's attention that the witnesses were not disclosed prior to trial. Obviously, the court knew this: the witnesses were called at the court's direction, after defense counsel objected to the chain of custody. Pretrial disclosure of witnesses is not mandated, and it was within this court's discretion to allow the witnesses to testify.

---

[11] The court did so primarily because there was no testimony establishing that the drugs had been in official custody at all times: no witness had yet testified from personal knowledge how the drugs were transported from the Gary Police Department to the Indiana State Police laboratory.

*United States v. Edwards*, 47 F.3d 841, 843 (7th Cir. 1995). As Gardner has not even

alleged how the failure to request a continuance caused him prejudice, he has not

identified a ground on which to base a finding of ineffective assistance of counsel.

As to ground eight, Gardner's contention that counsel was ineffective for not

requesting further voir dire to determine if any juror knew one or more of the three

additional witnesses, it is important to realize, as Gardner admits, he speculates that

this might be the case, not that he has become aware of information suggesting that it is

the case. The question therefore becomes whether the court should now take steps to

learn whether any juror knew one of the witnesses, a prerequisite to Gardner being able

to demonstrate prejudice, demanding additional time from 12 citizens who thought

they had completed their jury service nearly four years ago. The answer is plainly "no."

Gardner's speculation is unfounded based on the voir dire that did occur during

the jury selection process. Each prospective juror was asked:

> Have any of you or has anyone close to you ever been connected with a
> law enforcement agency in any way? And what I mean by that is, as a law
> enforcement officer such as a sheriff, a police officer, an FBI person, DEA
> person, IRS person, those kinds of things.

Vol. 1, p. 26. In addition, each juror was asked: "Have any of you ever been acquainted

with a law enforcement officer of any type whatsoever?" Vol. 1, p. 30. The jurors'

responses to these questions were extremely forthcoming, several of them answering

one or both of these questions affirmatively, and the court conducted extensive follow-

up questioning. In the end, only one person selected for jury duty admitted knowing, or

having any relationship to a law enforcement officer, that being an ex-spouse who was an East Chicago police officer. No juror admitted having any relationship to, or acquaintance with, any officer employed by the Gary Police Department.

Although the three "surprise" witnesses were not identified by name during jury selection, the thorough voir dire that was conducted made it unnecessary to do so when the matter came up mid-trial. Doing so then would essentially have plowed the same ground, and so defense counsel's failure to request conducting additional voir dire did not deviate from an acceptable standard of professional competence.

Even were that not the case, the court can only conclude that Gardner would be unable to demonstrate that he suffered any prejudice. Were the court to undertake discovery now which revealed both that a juror knew one of the witnesses, and because of that knowledge, was biased in favor of believing that witness's testimony, that does not undermine confidence in the outcome:

> [E]ven where juror bias is shown, not every incident requires a new trial. "'The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.'"

*United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir. 1986) (*quoting United States v. Hendrix*, 549 F.2d 1225, 1229 (9th Cir. 1977) (*in turn quoting United States v. Klee*, 494 F.2d 394, 396 (9th Cir 1974)). The three "surprise" witnesses who now cause Gardner's concern were brief foundational witnesses only, who may not even have been necessary, see *Smith*, 308 F.3d at 739, and not factual witnesses bearing directly on the issues relevant to Gardner's guilt or innocence. Putting their testimony aside, there was

substantial evidence to support the jury's verdict. Defense counsel's failure to request additional voir dire is simply a non-issue, as is appellate counsel's decision not to pursue that issue on direct appeal.

### 3. Failure to object to sentence for "crack" form of cocaine

As ground three in his motion, Gardner argues that his counsel was ineffective for not objecting to him being sentenced for possessing the "crack" form of cocaine, because "the question as to whether the drugs the defendant possessed were actually 'crack' or not was never posed to a jury, admitted by the defendant or proven beyond a reasonable doubt." This argument is completely unfounded.

First, the indictment (DE # 16) charged Gardner with knowingly and intentionally possessing with intent to distribute "fifty (50) grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as 'crack' cocaine, a schedule II controlled substance."

Second, expert witness Ivanyo, the Indiana State Police forensic drug chemist, testified that the substance seized from Gardner and his co-defendant was "cocaine base," known in street slang as crack cocaine. Vol. 3, pp. 88-89.

Third, in the final jury instructions (DE # 72) read to the jury, Instruction No. 8 explained that the first count of the indictment charged Gardner and his co-defendant with possessing, with intent to distribute, fifty grams or more of a mixture or substance containing "cocaine base, commonly known as 'crack' cocaine." This same language was repeated in Instruction No. 16, which set out the pertinent provisions of 21 U.S.C.

§ 841. Instruction No. 17, setting out the elements of the crime, stated that the jury had to determine, beyond a reasonable doubt, that Gardner possessed "cocaine base." Instruction No. 20 stated that "cocaine base, commonly known as crack cocaine," is a controlled substance.

Finally, the jury returned a special verdict (DE # 71), finding Gardner guilty of knowingly and intentionally possessing, with intent to distribute, "crack cocaine base," and finding that "the amount of crack cocaine base involved" was fifty grams or more.

In short, there was no basis for making an objection to sentencing Gardner for possession of the crack form of cocaine, and counsel was not ineffective.

## B. Performance of appellate counsel

As stated earlier in this order, the presumption that appellate counsel rendered effective assistance is outweighed only when he or she fails to raise "significant and obvious" issues that are stronger than those which were presented. *Gray*, 800 F.2d at 646 (7th Cir. 1985).

### 1. Instruction on burden of proof

Designated as ground one of Gardner's motion, he argues that his appellate counsel was ineffective for not objecting to Instruction No. 9 of the final jury instructions (DE # 72), which was erroneous because it:

> [F]ailed to instruct the jury that "If the Government fails to sustain its burden, you must find the defendant not guilty."
> The defendant contends that this instruction, unlike most of the suggested language in the various pattern instructions, is not optional.

> Therefore, the instruction in this case, given to the jury was clearly an [sic] structural error.

This argument finds no factual support in the record.

Instruction No. 9 was a near-verbatim (modified only so as to apply to two defendants and multiple charges) copy of Instruction 2.03, "Presumption of Innocence — Burden of Proof," from the Seventh Circuit Pattern Criminal Jury Instructions, and included the sentence: "The government has the burden of proving the guilt of a defendant beyond a reasonable doubt." In addition, instructions 17 and 19, setting out the elements of the two charges against Gardner, both instructed the jury that it had to find that every element had been proved beyond a reasonable doubt, and that if any element had not been proved beyond a reasonable doubt, it should find him not guilty. Last, final Instruction No. 29 was a near-verbatim copy of Instruction 7.06 of the Seventh Circuit Pattern Criminal Jury Instructions, and included the sentence: "Your sole interest is to determine whether the government has proved its case beyond a reasonable doubt."

The instructions accurately stated the law, and properly instructed the jury on the government's burden to prove Gardner's guilt beyond a reasonable doubt. His appellate counsel's performance cannot be faulted for failing to raise an issue on appeal regarding final Instruction No. 9.

## 2. Failure of jury to make finding on "crack" form of cocaine

As ground two of his motion, Gardner argues that his appellate counsel was ineffective for failing to raise on appeal that he was convicted without the jury making any finding on a required element of the offense:

> [T]he District Court omitted the word "crack" (which is clearly an element of the crime charged) from both the Indictment and the instruction given to the jury on the elements it needed to prove to find the defendant guilty.

This argument is clearly disproved by the record. As explained above in part II(A)(3) of this opinion and order, the indictment, the instructions and the verdict form all accurately reflected, and ensured a jury finding on, possession of cocaine base, also known as "crack" cocaine. Gardner's appellate counsel was not ineffective for failing to raise this issue on direct appeal.

## 3. "Surprise" witnesses

As ground four of his motion, Gardner argues that his appellate counsel was ineffective for not raising on direct appeal an argument that the district court abused its discretion by not precluding witnesses Rivera, Cook and Monroe from testifying. As explained above in part II(A)(2) of this opinion and order, this court neither erred nor abused its discretion in allowing these three witnesses to testify. Therefore, Gardner's appellate counsel committed no error by not raising this issue on direct appeal.

### III. Conclusion

Gardner's request to amend his motion (contained in DE # 155) is **GRANTED**. As explained above, Gardner's motion for discovery (letter seeking lab request forms, DE # 158) is **DENIED**. Because Gardner has made no argument that suggests that his counsel at trial, sentencing or on direct appeal rendered ineffective assistance of counsel, it "plainly appears from the motion . . . and the record of prior proceedings" that he is not entitled to relief, requiring the summary dismissal of his § 2255 motion. RULE 4, RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS. Accordingly, Gardner's motion pursuant to 28 U.S.C. § 2255 (DE # 147, as amended by DE # 155) is summarily **DENIED** and **DISMISSED**.

 The clerk shall **ENTER FINAL JUDGMENT** dismissing the collateral civil proceeding (2:08 CV 284) with prejudice, and give notice to defendant-movant Gardner.

**SO ORDERED.**

Date: June 18, 2009

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT